UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| SYLVIA F.T., <br>     Plaintiff, <br>     v. <br> NANCY BERRYHILL, Deputy Commissioner for Operations of Social Security Administration, <br>     Defendant. | Case No. SA CV 16-1708-SP <br><br> MEMORANDUM OPINION AND ORDER |

# I.

# **INTRODUCTION**

On September 14, 2016, plaintiff Sylvia F.T. filed a complaint against defendant, the Commissioner of the Social Security Administration ("Commissioner"), seeking a review of a denial of disability insurance benefits ("DIB") and supplemental security income ("SSI"). The parties have fully briefed the matter in dispute, and the court deems the matter suitable for adjudication without oral argument.

Plaintiff presents one disputed issue for decision: whether the Administrative Law Judge ("ALJ") properly considered the opinion of a consultative examiner, John S. Godes, M.D., in determining plaintiff's residual functional capacity ("RFC"). Plaintiff's Memorandum of Law in Support of a Social Security Appeal ("P. Mem.") at 14-19; Memorandum in Support of Defendant's Answer ("D. Mem.") at 2-7.

Having carefully studied the parties' memoranda on the issue in dispute, the Administrative Record ("AR"), and the decision of the ALJ, the court concludes that, as detailed herein, the ALJ properly considered Dr. Godes's opinion and reached a proper RFC determination. Consequently, the court affirms the decision of the Commissioner denying benefits.

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff, who was 46 years old on the alleged disability onset date, has an associate's degree in cosmetology. AR at 39, 65. Plaintiff has past relevant work as a retail sales clerk and a cashier checker. *Id.* at 58.

On April 23, 2013, plaintiff filed an application for DIB. *Id.* at 242. Plaintiff filed an application for SSI on May 7, 2013. *Id.* at 246. Plaintiff alleged an onset date of July 30, 2007 due to back problems, knee problems, neck problems, hand problems, foot problems, and high blood pressure. *Id.* at 65-66, 78-79. The Commissioner initially denied plaintiff's applications on October 30, 2013, and upon reconsideration on February 5, 2014. *Id.* at 126, 130, 136.

On March 11, 2015, plaintiff, represented by counsel, appeared and testified at a hearing before the ALJ. *Id*. at 39-44, 50-57. The ALJ also heard testimony from Kelly Winn, a vocational expert, and Dr. Arthur Lorber, a medical expert. *Id.* at 44-49, 57-63. On March 30, 2015, the ALJ denied plaintiff's claims for DIB and SSI benefits. *Id*. at 19-28.

Applying the well known five-step sequential evaluation process, the ALJ found, at step one, that plaintiff had engaged in substantial gainful activity during the period of June 26, 2014 through at least January 2015. *Id.* The ALJ also found "there has been a continuous 12-month period(s) during which [plaintiff] did not engage in substantial gainful activity. The remaining findings address the period(s) the claimant did not engage in substantial gainful activity." *Id.* at 22.

At step two, the ALJ found plaintiff suffered from the following severe impairments: degenerative disk disease of the lumbar spine with disk protrusions and moderate nerve root impingement – status/post lumbar laminectomy and discectomy in 1992; and degenerative joint disease of the right knee. *Id.*

At step three, the ALJ found plaintiff's impairments, whether individually or in combination, did not meet or medically equal one of the listed impairments set forth in 20 C.F.R. part 404, Subpart P, Appendix 1 (the "Listings"). *Id.* at 23.

The ALJ then assessed plaintiff's residual functional capacity,[1] and determined plaintiff has the RFC to perform a light work, with the limitations that she: can lift and carry 20 pounds occasionally and 10 pounds frequently; can sit for six hours total in an eight-hour workday; can stand and walk for six hours total in an eight-hour workday; must be able to alternate sitting and standing briefly every two hours; can occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and stairs; cannot climb ladders, ropes, and scaffolds; and must avoid exposure to unprotected heights and dangerous moving machinery. *Id.*

At step four, the ALJ found plaintiff capable of performing her past relevant

---

[1] Residual functional capacity is what a claimant can do despite existing exertional and nonexertional limitations. *Cooper v. Sullivan*, 880 F.2d 1152, 1155-56 n.5-7 (9th Cir. 1989). "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." *Massachi v. Astrue*, 486 F.3d 1149, 1151 n.2 (9th Cir. 2007).

work as a retail sales clerk and a cashier/clerk. *Id.* at 26. Consequently, the ALJ concluded plaintiff did not suffer from a disability as defined by the Social Security Act from the alleged onset date through the date of the decision. *Id.* at 27-28.

Plaintiff filed a timely request for review of the ALJ's decision, which was denied by the Appeals Council. *Id.* at 1-3. The ALJ's decision stands as the final decision of the Commissioner.

### III.
### STANDARD OF REVIEW

This court is empowered to review decisions by the Commissioner to deny benefits. 42 U.S.C. § 405(g). The findings and decision of the Social Security Administration must be upheld if they are free of legal error and supported by substantial evidence. *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001) (as amended). But if the court determines the ALJ's findings are based on legal error or are not supported by substantial evidence in the record, the court may reject the findings and set aside the decision to deny benefits. *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001); *Tonapetyan v. Halter*, 242 F.3d 1144, 1147 (9th Cir. 2001).

"Substantial evidence is more than a mere scintilla, but less than a preponderance." *Aukland*, 257 F.3d at 1035. Substantial evidence is such "relevant evidence which a reasonable person might accept as adequate to support a conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *Mayes*, 276 F.3d at 459. To determine whether substantial evidence supports the ALJ's finding, the reviewing court must review the administrative record as a whole, "weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion." *Mayes*, 276 F.3d at 459. The ALJ's decision "'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'"

*Aukland*, 257 F.3d at 1035 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)). If the evidence can reasonably support either affirming or reversing the ALJ's decision, the reviewing court "'may not substitute its judgment for that of the ALJ.'" *Id.* (quoting *Matney v. Sullivan*, 981 F.2d 1016, 1018 (9th Cir. 1992)).

## IV.
## DISCUSSION

Plaintiff argues the ALJ failed to properly consider and incorporate the opinion of consultative examiner Dr. John S. Godes, a Board Certified Internist, in her RFC determination. P. Mem. at 14-18. Specifically, plaintiff contends the ALJ erred in rejecting Dr. Godes's opinion that she was limited to standing or walking only two hours out of an eight-hour workday, which would have limited plaintiff to sedentary work. *Id.* at 15; *see id.* at 543.

RFC is what one can "still do despite [his or her] limitations." 20 C.F.R. § 416.945(a)(1)-(2).[2] The ALJ reaches an RFC determination by reviewing and considering all of the relevant evidence, including non-severe impairments. *Id.*; *see Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007) (the failure to address an impairment at step two is harmless if the RFC discussed it in step four). Among the evidence the ALJ considers is medical evidence. 20 C.F.R. § 416.927(b).

In evaluating medical opinions, the regulations distinguish among three types of physicians: (1) treating physicians; (2) examining physicians; and (3) non-examining physicians. 20 C.F.R. § 416.927(c), (e); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996) (as amended). "Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." *Holohan v. Massanari*,

---

[2] All citations to the Code of Federal Regulations refer to regulations applicable to claims filed before March 27, 2017.

5

246 F.3d 1195, 1202 (9th Cir. 2001); 20 C.F.R. § 416.927(c)(1)-(2). The opinion of the treating physician is generally given the greatest weight because the treating physician is employed to cure and has a greater opportunity to understand and observe a claimant. *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996); *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

Nevertheless, the ALJ is not bound by the opinion of the treating physician. *Smolen*, 80 F.3d at 1285. If a treating physician's opinion is uncontradicted, the ALJ must provide clear and convincing reasons for giving it less weight. *Lester*, 81 F.3d at 830. If the treating physician's opinion is contradicted by other opinions, the ALJ must provide specific and legitimate reasons supported by substantial evidence for rejecting it. *Id.* at 830. Likewise, the ALJ must provide specific and legitimate reasons supported by substantial evidence for rejecting the contradicted opinions of examining physicians. *Id.* at 830-31. The opinion of a non-examining physician, standing alone, cannot constitute substantial evidence. *Widmark v. Barnhart*, 454 F.3d 1063, 1066 n.2 (9th Cir. 2006); *Morgan v. Comm'r*, 169 F.3d 595, 602 (9th Cir. 1999); *see also Erickson v. Shalala*, 9 F.3d 813, 818 n.7 (9th Cir. 1993).

## A. Relevant Facts

### 1. Treatment History

In her DIB and SSI applications, plaintiff alleges disability due to high blood pressure and problems in her back, knees, neck, hands and feet. AR 65-67, 78-79. The record indicates that in June 1992, well prior to the alleged 2007 onset date, plaintiff underwent a lumbar laminectomy of L4 and L5 with discectomy L4-5 and bilateral neural foraminotomy, due to spinal stenosis with disc herniation. *Id.* at 520. A letter dated October 1, 1992 from Dr. Charles Rosen, an orthopedist, states that after her surgery plaintiff was "doing very well. Her leg pain is gone. Occasionally she will have some minimal back pain, but this is infrequent." *Id.* at

518. The same letter notes that plaintiff was involved in a car accident the day before and she "felt a little pain in her lumbar spine and her neck, but this has largely resolved." *Id.* The doctor concluded that plaintiff "may return to work, but should have a restriction of no very heavy lifting on a prophylactic basis." *Id.*

On July 15, 2013, plaintiff visited Nurse Practitioner Gladys Casillas. *Id.* at 451. Plaintiff complained of numbness and tingling on the lateral side of her bilateral lower extremities. *Id.* at 454. Plaintiff also reported increased pain with squatting and bending forward, and claimed that she can carry 10 pounds comfortably. *Id.* The examination results indicated that plaintiff "[h]as pain with forward flexion, [is] unable to squat [and is] able to walk on tip toes and heels without difficulty." *Id.* at 455. Plaintiff was referred to an orthopedist. *Id.*

In August 2013, Dr. Payam Farjoodi, an orthopedist, evaluated plaintiff for low back pain with radiation into the right lower extremity. *Id.* at 553. Plaintiff reported that after her surgery in 1992, her back pain resurfaced in 2007 and "gradually worsened to the point that she was quite debilitated with her activities of daily living and walking. She currently rates her pain as 10/10." *Id.* An x-ray revealed "disc degeneration most notable at L5-S1 with anterior osteophyte formation at L4-L5." *Id.* at 554. Dr. Farjoodi diagnosed plaintiff with sciatica and ordered an MRI for further evaluation. *Id.*

On August 26, 2013, plaintiff had an MRI, which revealed disc loss and disc bulging in the L3-4 level, degenerative disc disease in the L4-5 level, and posterior disc bulging in the L5-S1 level. *Id.* at 551. The MRI report also reflected nerve root impairment. *Id.* The overall impression was: "(1) L3-4 with mild disc bulging posterior left, (2) L4-5 with degenerative disc disease, broad-based disc protrusion and moderate nerve root impingement with dorsal enhancing scar . . . [and] (3) L5-S1 with recurrent posterior right sided disc protrusion with enhancement and enhancing scar dorsally." *Id.* 551-52.

On September 6, 2013, plaintiff visited Dr. Farjoodi to review the results of the MRI. *Id.* at 550. Dr. Farjoodi prescribed physical therapy. *Id.* Plaintiff returned for a visit with Dr. Farjoodi on October 18, 2013, where Dr. Farjoodi again recommended physical therapy and made a referral for selective nerve root block. *Id.* at 549. Dr. Farjoodi treated plaintiff again in December 2013. *Id.* at 548. He "once again ordered physical therapy" and scheduled plaintiff to see her pain management physician with the next week to undergo selective nerve root block. *Id.*

Treatment notes from October 16, 2014 indicate that plaintiff fell at work and suffered from lower back, hip, and knee pain. *Id.* at 567. Subsequent x-ray imaging showed plaintiff had osteoarthritis with large loose bodies in the right knee, and mild degenerative changes in the right hip and right foot. *Id.* at 611, 668-69. Despite these findings, during multiple visits between November and December 2014, plaintiff "was advised to continue to work without restrictions." *Id.* at 639, 644, 653.

### 2. Opinions of Examining Physician

On September 7, 2011, plaintiff visited Dr. John S. Godes for a consultative examination in connection with a prior application for disability benefits. *Id.* at 415-22. Dr. Godes's notes indicate plaintiff told him her back pain "was much improved after the [1992] surgery, but about 1 year ago, the back pain recurred, and she currently notes constant back pain with radiation to the legs at times." *Id.* at 416. Dr. Godes's physical examination of plaintiff revealed largely normal findings. *Id.* at 417-19. He did find tenderness of the lower lumbar spine and paravertebral areas, somewhat limited range of motion in her back, and the straight leg raising was to 30 degrees and produced sciatic pain. *Id.* at 418. He also noted her gait was slow. *Id.* at 419. Dr. Godes opined that plaintiff can lift 20 pounds occasionally and 10 pounds frequently, stand or walk for 6 hours of an 8-hour

workday, and sit for 6 hours of an 8-hour workday. *Id.* at 420. Further, Dr. Godes found "no push and pull, postural, manipulative, visual, communicative or environmental limitations." *Id.*

Dr. Godes evaluated plaintiff again in October 2013, this time for plaintiff's current applications for disability benefits. *Id.* 538-45. Dr. Godes's observations from his physical examination were substantially identical for the most part to his observations in his 2011 examination. *See id.* at 539-42. The changes he noted were: her range of motion in her back was slightly more limited than in 2011; her right leg strength was in 2013 4/5 rather than normal; she had hypesthesia in her right medial lower leg, whereas in 2011 she had none; and he described her gait as "walk[ing] slowly one-step at a time," rather than simply as "slow" as he did in 2011. *Id.* at 541-42; *see id.* at 418-19. Despite only these minor changes in his observations from 2011 to 2013, Dr. Godes opined that plaintiff was then able to stand or walk for only two hours of an eight-hour workday. *Id.* at 543. Dr. Godes explained that the "limitation is imposed because of [plaintiff's] lumbar discogenic disease with radiculopathy with hypesthesia and decreased strength of the right leg and altered gait." *Id.*

### 3. Opinions of Non-examining Physicians

Dr. V. Phillips, a State Agency medical consultant, reviewed plaintiff's medical records at the initial level. *See id.* at 65-77, 78-90. Dr. Phillips determined plaintiff suffered from severe spine disorder, non-severe hypertension, and non-severe affective disorder. *Id.* at 71, 84. From a functional perspective, Dr. Phillips opined plaintiff could lift or carry 20 pounds occasionally and 10 pounds frequently, stand or walk 6 hours in an 8-hour day, and sit for 6 hours in an 8-hour day. *Id.* at 73, 86. In making the determination, Dr. Phillips stated that Dr. Godes's 2013 "opinion is an overestimate of the severity of the individual's restrictions/limitations and based only on a snapshot of the individual's

functioning." *Id.* at 75.

Dr. M. Sohn, a State Agency physician, reviewed plaintiff's medical records at the reconsideration level. *Id.* at 93-106, 107-20. Dr. Sohn concluded that plaintiff suffers from severe spine disorder and non-severe affective disorder. *Id.* at 99, 113. Dr. Sohn reached the same conclusions as Dr. Phillips regarding plaintiff's functional limitations. *Id.* at 101, 115.

### 4. Hearing Testimony

At the hearing before the ALJ, plaintiff testified that in 2007 she stopped working to help her mother who was suffering from Alzheimer's. *Id* at 52. This entailed feeding her, bathing her, assisting her with her medication, and lifting her, although her mother weighed more than 250 pounds. *Id.* at 48. Her mother had since passed away, but plaintiff testified she cannot go back to work because she is limited in her ability to stand. *Id.* at 52. Plaintiff further indicated that although she works in pain, she currently works part-time at Fresh and Easy, where she assists customers with their groceries, helps customers find products, and answers questions about memberships. *Id.* at 40. Plaintiff works about 4 hours a day for a total of approximately 20 hours per week and she spends almost all that time standing and walking. *Id* at 41. Plaintiff also testified that Dr. Farjoodi recommended she have surgery for her back, but she refused to undergo that treatment. *Id.* at 47. Plaintiff explained that she feared having surgery again because she does not have anyone to help her out. *Id.* at 52.

Medical expert Dr. Arthur Lorber also testified. Acknowledging there is a 20-year gap in medical records since plaintiff's 1992 surgery, Dr. Lorber concluded that "[i]n view of the fact that there was MRI evidence of nerve root impingement at two levels bilaterally, in view of the fact that [plaintiff] had strongly positive straight leg raising tests despite the fact that she had no other significant evidence of focal neurological deficit, it is clear . . . that as of 19

October '13, [plaintiff] was not capable of returning to work on a light-duty basis, if indeed at any basis." *Id.* at 46. Dr. Lorber opined that "despite the fact that she cared for her mother, it's [his] opinion that [plaintiff] equals listing 1.04 as of her alleged onset date in 2007 and ongoing." *Id.* at 49. Dr. Lorber also opined that plaintiff "should be a candidate for surgery and could significantly improve with surgery and become employable." *Id.*

**B.** **The ALJ's Findings**

Relying on the treatment records, objective medical evidence, and medical and non-medical opinions, the ALJ determined plaintiff had the RFC to perform light work, with limitations that including being able to stand and walk for six hours in an eight-hour workday. *Id.* at 23. In reaching her RFC determination, the ALJ discussed all of the medical history, gave significant weight to the opinion of Dr. Phillips, gave some weight to the opinion of Dr. Sohn, and gave little weight to the opinions of Dr. Lorber and Dr. Godes. *Id.* at 23-26.

Plaintiff challenges only the ALJ's rejection of Dr. Godes's opinion that plaintiff was limited to standing and walking just two hours out of an eight-hour workday, which would have limited plaintiff to sedentary work. The court finds the ALJ provided specific and legitimate reasons supported by substantial evidence in the record for rejecting Dr. Godes's opinion.

First, the ALJ observed that Dr. Godes examined plaintiff twice and reached different conclusions as to her ability to stand and walk despite only minor changes in his examination findings. *Id.* at 26. Dr. Godes examined plaintiff in September 2011 and October 2013. Between the two examinations her range of motion in her back decreased slightly, from 10/25 degrees in extension and lateral flexion in 2011 to 5/25 degrees in 2013. *Id.* at 418, 541. In 2011 Dr. Godes found plaintiff's leg strength was normal, whereas in 2013 he found that the strength in plaintiff's left leg was 5/5 and the strength in her right leg was 4/5. *Id.* at 419, 520. Further,

11

Dr. Godes found plaintiff had developed hypesthesia in her right medial lower leg by 2013. *Id.* The ALJ found these to be only "minimal changes" in Dr. Godes's 2013 examination findings compared to those of 2011, and found them insufficient to support Dr. Godes's more extreme limitation of plaintiff to standing and walking just two hours in an eight-hour workday in 2013, after finding in September 2011 that plaintiff could stand and walk six hours in an eight-hour workday. *Id.* at 26.

Plaintiff argues the ALJ improperly substituted her own lay opinion for Dr. Godes's opinion, and should have deferred to Dr. Godes's explanation for the change in his opinion, namely, that he imposed the more extreme standing and walking limitation due to plaintiff's lumbar discogenic disease with radiculopathy, hypesthesia and decreased strength in the right leg, and altered gait. *See id.* at 543. But the lumbar discogenic disease was not new. Similarly, Dr. Godes found plaintiff's gait to be slow in both 2011 and 2013, although provided slightly more description of the slow gait in 2013. The hypesthesia and decreased strength in her right leg were new in 2013, but with strength still 4/5, the ALJ reasonably rejected these developments as insufficient to account for the extreme standing and walking limitation opined by Dr. Godes. This was not simply the ALJ's conclusion. Dr. Phillips reviewed Dr. Godes's findings and disagreed with Dr. Godes's more restrictive opinion. *Id.* at 75. Dr. Phillips noted that Dr. Godes's opinion relies heavily on plaintiff's subjective reporting, found the totality of the evidence does not support the opinion, and determined Dr. Godes's opinion to be "an overestimate of the severity of [plaintiff's] restrictions/limitations and based only on a snapshot of [plaintiff's] functioning." *Id.* While the ALJ gave little weight to Dr. Godes's opinion, she gave Dr. Phillips's opinion significant weight.

Second, the ALJ found Dr. Godes's assessment to be inconsistent with plaintiff's testimony about her care of her mother. *Id.* at 26. Plaintiff testified that in 2007 she stopped working to care for her 250-pound mother, which entailed

12

feeding her, bathing her, assisting her with her medication, and lifting her.  *Id.* at 48.  Plaintiff cared for her mother until she passed away in 2014.  *Id.*  Plaintiff accurately points out that this care did not necessarily involve a significant amount of standing and walking, and therefore is not necessarily inconsistent with Dr. Godes's assessment.  Thus, by itself, this was not a legitimate reason to reject Dr. Godes's standing and walking limitation.  At the same time, the care plaintiff described went well beyond sedentary work.

Third, the ALJ found Dr. Godes's assessment to be inconsistent with plaintiff's current work activity.  *Id.* at 26.  Plaintiff testified that as of June 2014, she works at Fresh & Easy approximately four hours a day for a total of 20 hours a week, and she spends all that time standing and walking.  *Id.* at 41.  This testimony may not show plaintiff can stand and walk for six hours, but it does show plaintiff can stand and walk more than two hours in an eight-hour shift.  It therefore undercuts Dr. Godes's opinion, as the ALJ concluded.  Further, the ALJ reasonably found this testimony suggests plaintiff's condition did not significantly worsen and may even have improved after Dr. Godes's 2013 examination.  *Id.* at 26.

Accordingly, the court finds the ALJ provided at least two specific and legitimate reasons supported by substantial evidence for rejecting Dr. Godes's opinion.  Since the ALJ properly rejected Dr. Godes's standing and walking limitation, the ALJ's assessment of plaintiff's RFC was supported by substantial evidence in the record as a whole.  This evidence included, inter alia, treatment records from July 2013 and December 2014 showing plaintiff had no weakness in her legs and a normal gait.  *Id.* at 455, 643, 650.  Between October and December 2014, plaintiff was treated on multiple occasions for lower back, hip, and knee pain.  The treatment notes consistently reflect plaintiff "was advised to continue to work without restrictions."  *Id.* at 639, 644, 653.  Thus, the ALJ's RFC determination was supported by substantial evidence.

# V.
# **CONCLUSION**

IT IS THEREFORE ORDERED that Judgment shall be entered AFFIRMING the decision of the Commissioner denying benefits, and dismissing the complaint with prejudice.

DATED: July 2, 2018

_____
SHERI PYM
United States Magistrate Judge